Thank you, Your Honor, and may it please the Court, Matthew Wright here on behalf of Joel Patton. And today we're asking this Court to reverse and reform the District Court's three reasons. First, because Mr. Patton's Notice of Appeal was timely filed. Second, because the District Court misapplied the gatekeeping standard for a 2255 motion based on Johnson. And third, because Mr. Patton has shown that his Armed Career Criminal Act sentence is illegal and unlawful now that the residual clause has been struck down. So returning to my first point, Your Honors, the Notice of Appeal was timely filed. There are two reasons why we contend this is the case. First, because the Gonzalez v. Crosby doctrine does not apply to this motion. And second, because even if the doctrine did, it would not affect the timeliness of the appeal or this Court's jurisdiction. The reason I submit that the doctrine does not apply to this motion is because, first of all, this was a gatekeeping order. The District Court itself understood this Court's instructions, thou shalt not reach the merits of this case if Mr. Patton does not meet his burden. The District Court, we contend wrongly, exercised its authority at the gatekeeping stage to preclude a merits determination. So under the straightforward language of Gonzalez v. Crosby itself, the doctrine does not apply to a post-judgment challenge to that order. But aren't you arguing that the Texas robbery is not a violent felony under the Fourth Clause? We are, Your Honor. But it's not a merits determination. Your Honor, it wasn't a merits determination here because the District Court understood it could not reach the merits. Now, there were some — there was substantive reasoning that was attached to the District Court's gatekeeping determination, but it was a determination that precluded a ruling on the merits for purposes of 2255. Now, we are submitting to this Court that we are right on the merits because Mr. Patton has over-served the 10-year lawful sentence, and so he's entitled to immediate relief, the same as happened in Lawrence-Taylor. So we are making that argument on appeal, but the post-judgment motion itself was challenging a gatekeeping order. But even if the Court won't agree with me on that point, the post-judgment motion also attacked defects in what Gonzalez calls the Federal Post-Conviction Proceeding. They call it the Federal Habeas Proceeding. The document clearly expressed an intent to appeal to this Court, and we complained about the fact that our motion for authorization, which contained basically the crux of our argument, was never filed in the District Court. So that alone, that footnote alone in the motion would be enough to allow us to avoid the application of the Gonzalez Doctrine here. But I'd also submit that even if the doctrine applied, if we were wrong about this, it would not affect the timeliness of the appeal or this Court's jurisdiction. Now, I will concede, as we did in our reply brief, that there are statements in this case that say if the doctrine applied, the notice of appeal wasn't timely. But from what I can tell, in every one of those cases, the Court has found the doctrine did not apply. Do you think Rule 52 and 59 are the appropriate motions that provide an authorized successive 2255? In other words, extend the time? Your Honor, I think that those motions, what they do is they keep the judgment from becoming final. So, and that's from the straightforward application of Rule 4A4. So as we say in the reply, it's not clear. We could treat that either as extending the time to file an appeal, which the District Court has statutory authority to do, and the Supreme Court has the authority to prescribe rules governing that. So it's like a per se extension. Or it is, it stops it from being final, which again is something that the Supreme Court has statutory authority to do. You'd say that those are just as effective as a Rule 60B motion for purposes of your argument? I would say they're more effective than a Rule 60B motion, because a Rule 60B motion creates a whole lot of problems about finality. It's not nearly as limited in terms of the grounds that you can bring it on, but certainly at least as effective. And that's straightforward application of Rule 4A4A, subsections 2, 4, and 5. 2 is request for additional different findings, 4 is alter or amend the judgment, and 5 is neutral under Rule 59. So from a straightforward application of the rule, this is a timely appeal. Moving to my second point, Your Honor, I'm happy to talk more about jurisdiction, the sort of subject only an appellate lawyer or judge could love, but I do want to talk about the gatekeeping standard as well. The District Court decided this case at the gatekeeping stage without the benefit of this Court's decision in Lawrence-Taylor. And Lawrence-Taylor makes clear that this was an incorrect application of the gatekeeping standard. In Lawrence-Taylor, this Court said, we will not penalize a movant for what might or might not have crossed the District Court's mind at sentencing. So just like this case, Lawrence-Taylor involved a silent sentencing record in terms of which of the prongs of the Armed Career Criminal Act was being applied. And the government, again, argued there was a potential possible legally erroneous theory under the Elements Clause. Maybe the District Court was doing that, therefore, they can't show that this was Johnson error. This Court said, no, we are not going to attribute to the District Court a legal error in order to avoid a claim for relief under Johnson. In other words, it would have been erroneous for the District Court to apply the Elements Clause on this fact, on this record. And this Court said that does not defeat a subsequent showing of a successive motion under Johnson. In other words, we are allowed to say the Elements Clause would have been illegal, therefore, this is a residual clause case. But there's no evidence that the residual clause was the source of the enhancement. Well, Your Honor, I'll disagree with that insofar as we are entitled to rely on substantive opinions. Substantive opinions apply for purposes of collateral review. And that's from the Supreme Court's case in Bosley, where they say, if you are attempting to show a Federal constitutional error, you may rely on intervening substantive decisions. Those would include Curtis Johnson as well as all of this Court's Force Clause cases. I would also submit that that same argument could have been raised in Lawrence-Taylor. As a matter of fact, it was raised by the District Court in Lawrence-Taylor, and that's in this Court's opinion. The Court says there's no evidence that we were thinking about the residual clause at the time. This Court recognized that does not preclude relief on a successive Johnson motion. Why? Because the District Court doesn't have to say why it's enhancing someone's sentence under the Armed Career Criminal Act. Much like jury instructions, now, because of Almendarez-Torres, it's the District Court doing that instead of the jury, but the instructions are submitted in the disjunctive like a black box. And so, you know, you put the input into the black box, the Armed Career Criminal Act sentence comes out, and the majority rule, the better rule says if one of the And so we're allowed to get in the door on a Johnson claim and show that it was prejudicial. In other words, show that the sentence is illegal. But in this case, we also have reason to believe it was a residual clause. That reason to believe is it would have been wrong to apply the Elements Clause. And this Court has consistently held that there is a distinction between the use of physical force and the causation of bodily injury, and began holding that while this case was on direct appeal. So if we wanted to give it the narrowest possible construction of the gatekeeping standard, let's say let's go back and the only thing that we change is we delete the residual clause from the Armed Career Criminal Act. What happens? What happens is the act of sentence is reversed here, because this Court recognized while Mr. Patton's case was on direct appeal that the use of physical force and the causation of injury are different. But again, I don't think we have to show that it happened while the case was pending because the Supreme Court has said we are allowed to use intervening substantive decisions to show Federal constitutional error. That's the straightforward holding of Bosley. Lawrence-Taylor stands for the proposition that if the record is silent, do not assume the district court made a legal error. And my third point, Your Honor, is that Mr. Patton has shown that his ACCA enhanced sentence is illegal. The four simple robbery convictions cannot count as violent felonies. They could not count as violent felonies under the elements clause at the time, but they could count as violent felonies under the residual clause. Now, I submit that, and, Judge Clement, you've said there's no evidence of that, but I think the evidence of that is United States v. Davis, because there you have a case with exactly the same inputs, which was a defendant whose ACCA sentence was based on Texas simple robbery, challenged it on appeal, and this Court said it's a residual clause violent felony. So what we have is a situation who is ACCA with the residual clause. That's United States v. Davis. Not ACCA without the residual clause. That's United States v. Burris. I'm not sure what more the government wants from us. This is a classic Johnson-based 2255. This Court recognized that when it authorized Mr. Patton to file his successive motion. And the district court, again, operating without the benefit of Lawrence-Taylor and, unfortunately, operating without the benefit of the argument that we had put forward to explain that this was a residual clause offense and not an elements clause offense, decided otherwise. We challenged that gatekeeping determination as we were allowed to do under Gonzales v. Crosby with a post-judgment motion, so our notice of appeal is timely. I'll talk briefly about the gatekeeping standard. I think that Lawrence-Taylor forecloses some of the extreme interpretations of the Tenth or Eleventh Circuit Snyder and Beaman cases, in other words, saying Lawrence-Taylor clearly, as I say, prohibits this Court from attributing legal error to the district court at the time. But I also want to say that the issue in those cases is a new procedural rule. So the question is questions of divisibility, like de Camp or Mathis. Are you allowed to utilize that? And so the argument that you can is that really this is a question of prejudice. The argument that you can't is, no, this is a question of whether or not there's constitutional error, and so you're not allowed to use intervening procedural decisions. But there I want to return to my point that this is not what we're talking about here. In other words, I am not saying use intervening divisibility law, and therefore, we can show Johnson error. I'm just saying use the substantive law that this Court has consistently held for more than 10 years and has never deviated from. And in that sense, I think even under Snyder or Beaman, we prevail. The better rule, the majority rule, and I think the rule that is positively discussed in Lawrence-Taylor is represented by United States v. Winston from the Fourth Circuit and Giozzo's from the Ninth Circuit. As I say, they apply the Stromberg principle, recognizing that in this situation, the district judge is operating as the jury. In other words, are the requisites for this enhanced version of the sentence satisfied? The district court is operating it, and so if you can show the district court might have relied on it, in other words, it's in the black box, then that's enough to get you in the door. So they were asking for the question that is put to the court by 2255's text itself. That is, is the sentence illegal? The alternative argument reminds me of a discussion a criminal defense attorney could have with his or her client that says, well, you make a good defense to the bank robbery except for the fact that they found all of the money in your room. And the defendant says, oh, that's OK. We'll tell them that's drug dealing money. That's essentially what these extreme applications of the gatekeeping standard are. In other words, to try to avoid the recognition of Johnson error, they say, well, let's attribute to the district court some other unlawful decision. When there's no support for that in the record, we think that's wrong. We think that it's certainly not required by the text of either 2255H2, which governs successive motions, or 2244, which is incorporated in this Court's Reyes Urquain decision. Those decisions only require that the motion contain a new constitutional rule or rely on a new constitutional rule. That's 2244. So our motion does both. Why does it do both? Because without Johnson, I can't even come in the door on this case, neither at the original sentencing nor afterwards, because Texas simple robbery was a violent felony under Atkins' residual clause. It was not under the elements clause and never was. So in that sense, without Johnson, I have nothing. With Johnson, I have an illegal sentence. So I'm not sure what more this Court could require of a successive Johnson movement, but I think we've satisfied any of the available standards. If the Court has no further questions, I have reserved some time for rebuttal. You may. Thank you, sir. Ms. Bursch? Do we have jurisdiction? Good morning. May it please the Court? Your Honor, this Court was right to sua sponte, recognize a jurisdictional problem in this case. Under Gonzales v. Crosby, when a post-judgment motion seeks vindication of a claim that was a substantive claim and decides it, or if it attacks the federal court's previous resolution of the claim on its merits, then it should be construed as a successive motion. And if it's construed as a successive motion, then the notice of appeal, the time for filing the notice of appeal is not told under Uranga, and his notice of appeal becomes untimely. With an untimely notice of appeal, and I disagree with Mr. Wright that that's a claims processing rule. I think you get to the claims processing rule if it's told. If it's not told, then you're back into 60 days and under 2107, that's statutory, and that is what would define the court of jurisdiction in this case. Your Honor, under this Court's precedent, even in Hernandez, a motion that just simply recapitulates the prior substantive argument is in effect, in substance, an unauthorized successive 2255 motion. And I think to get to that, we look at what the motion actually said. And in Mr. Patton's motion, never one time does he challenge the gatekeeping function. Never one time does he say, we're asking the court to take a step back and reconsider its gatekeeping function. We're asking the court to reach the merits of this claim. It just jumps right into the merits of the robbery. Oh, is that argument waived? I'm sorry? Was that argument waived? I do believe the argument was waived, and because he didn't put it in that motion, the court would not have known, hey, I'm, oh, what he's really challenging is a refusal to decide the merits. And I think the court's order wasn't a refusal to decide the merits. If you read the court's order, it kind of does a two-pronged thing. First, the court says, look, I don't think you've met the residual clause standard. At that time, we didn't know what that standard was. We still sort of don't know what that standard is. But in any event, the district court said, look, I'm going to require actual reliance. You don't meet it. But, and he goes on and says, moreover, you still qualify today as it stands, and that's reaching the merits. And when you look at Mr. Patton's motion, the only thing on page 3 of his motion, which is page 226 of the record, he says, the court specifically found that Mr. Patton's convictions for simple robbery, quote, continue to qualify as violent felonies under the fourth clause of the ACCA. And that is the substance of what his whole argument is based on Rico Mejia and also, of course, contesting the district court's decision not to issue the COA. We know that a motion for reconsideration on the COA doesn't toll the time period under Rule 11 of the rules governing Section 2255 proceedings. And so then the question just becomes, okay, does this other part of his motion, where he's arguing about simple robbery, does that toll it? And because it's a motion that gets to the resolution, the district court's resolution of his original motion on its merits, it doesn't. Mr. Patton makes an argument that his motion, that this court should construe his motion as a notice of appeal, and I think that's a harder argument. Under Bailey, this court has said before, if a motion is the functional equivalent of a motion of appeal, and it's found that in a motion for a COA and also for a motion for an extension of time for a certificate of appealability. This is neither of those things, but he does ask for this sort of reconsideration. I think what makes this different from Bailey is that the court's already denied the COA, and he should know under the rules of, under the Section 2255 rules, that doesn't toll it via notice of appeal. I do want to address the gatekeeping standard. Obviously, the government has advocated for the actual reliance standard. That is the standard that I'm authorized to advocate for. But I do understand that Lawrence Taylor opinion, at the very least, expresses skepticism for that standard and talks about other possible standards that might be applied. And in this case, in the district court's ruling, the denial of the post-judgment motion, the district court sort of adopts this snapshot standard. In the original one, he uses actual reliance. When he comes back on the denial of the motion for reconsideration or the post-judgment motion, he sort of attempts to take a snapshot of the law as it existed at the time and says, look, back then this would have been an elements of force clause case. I still think it is. And I think that's important because this is the same district court that sentenced Mr. Patton back in 2001. So if back in 2001 he thought it was an elements force clause offense and last year he believes it was an elements force clause offense, I don't think there's any support for the idea that the district court back in 2001 relied on the residual clause in sentencing Mr. Patton. We do acknowledge that Davis in 2007 made robbery a residual clause offense. That certainly happened after Mr. Patton's sentencing. And to the extent that there's this argument that the court in Chapa Garza started talking about this use of force and intentional or unintentional force while his case was Mr. Patton's case was on appeal, that decision issued in March of 2001, Mr. Patton was sentenced in January of 2001. So even if that was a case that was going forward at the same time that his appeal was going forward, at the time the court sentenced him, it didn't have the benefit of Chapa Garza. Your Honor, Mr. Patton has served the bulk of his 17-and-a-half-year sentence. I checked the Bureau of Prison website this morning. He has released to the residential reentry facility. So as a practical matter, we're discussing the difference between him serving a five-year term of supervised release. Should the court determine that his sentence is invalid because of his prior robberies, it would go to a 10-year statutory maximum under 922G, and that only allows three-year term of supervised release versus the five-year term of supervised release that's authorized under the ACCA. He would still be subject to supervised release? Yes. And released from the halfway house? Where is he now, halfway house? At the halfway house, yes, Your Honor. He got the five years on this, is that correct? He got the five years on this. Supervised release. So if it gets reduced to three years, there's another practical consideration, which is because he's over-served. When his three years come up, let's say he goes on supervised release and is not able to comply with conditions, violates his conditions, there's a difference if he's got a five-year term and he violates, the court has some leeway, the district court will have leeway in what kind of sentence it can impose. If he's got a three-year term of supervised release and he violates because he over-served by more than five years, he would essentially not be subject to a revocation sentence. I believe is how that works. So why is he subject to a supervised release? That's very expensive if there's not going to be any teeth, too. Yeah, right. What's the government's position on that? I believe the government's position is that we would still have him on supervised release just for the safety of the community. Even though we wouldn't necessarily ourselves be able to impose a prison sentence on revocation, we can modify conditions, we can. If he were to violate, of course, the state would have opportunities, depending on what the violation was, I mean, it just depends. But I don't think that the government would be in favor of not having someone with his history on supervised release. Even though there's no revocation? I understand the court would have to be prosecuted for the subsequent crime. Correct, Your Honor. Okay, thank you. Does the court have any other questions? Is there any mention at all in the record of either by the terminology of residual clause or elsewhere, is there any mention in the district court record of the ACCA, the residual clause, at all as part of the sentencing? In terms of the original sentencing, Your Honor? Yes. No, Your Honor. Okay.  Right, of course. Okay, all right. It would have been all too helpful, I guess, if we had known. All right. I will also, just to be excessively careful, note that our adverse decision process in Burris is ongoing. We have conceded that Burris controls in terms of these robberies here. Are you filing a petition for re-hearing? I don't know the answer right this moment, Your Honor. I know that the Solicitor General's office has it. They're considering it. It's a time frame, you know. Yes, and I believe that—I'm not sure if we've already filed our motion to extend that time frame. I think we have, but I'm not 100% sure on that. That process just takes a lot longer than any of us like. And Burris was issued—actually, my brief was having tables built when Burris was issued. And so because this was an expedited appeal, we didn't feel like the court would be amenable to an extension here for us to vet what arguments we'd be able to make here. So to the extent we've made concessions here in terms of threat robbery and Burris controlling, I limit that to just this case under these particular circumstances. Thank you. Thank you. Thank you. Your Honor, responding to the government's argument that the gatekeeping order was, in fact, a twofold order that also addressed the merits, I think we should accept the government's invitation to read the order itself. On page 220 of the record, the appellate court directed this court to, quote, dismiss the 2255 motion without reaching the merits if this court determines that he's failed to make the showing required. The following paragraph. The government argued that he failed to make the showing required to file his successive motion. The movement has the burden of showing that the district court enhanced his sentence under the ACCA. Now, that's the part that we submit is not entirely consistent with Lawrence-Taylor, the better gatekeeping standard, but this is still the gatekeeping burden. Turning to the next page, 221, the court does say movement continues to have at least three qualifying convictions, but the next sentence, thus, movement has failed to meet his burden. This is a gatekeeping order. This is an order that precludes a determination of the merits under Reyes-Racana, which is binding Fifth Circuit authority, under this court's order of authorization, under the district court's own understanding of it. So the district court understood it could not reach the merits. The government does not explain why the district court, correctly understanding that if Mr. Patton couldn't satisfy the gatekeeping standard, nonetheless thought I'm going to charge right in and resolve the merits in a final sentence. So in that sense, this is an order precluding resolution of the merits. I do not contend that the arguments are separate, that they're entirely different. These are very close to one another, the way that the courts have dealt with these Johnson claims, but this is, for purposes of Gonzales, an order precluding determination of the merits, just as if the district court had said you don't fall under the statute of limitations under F-3 because you can't satisfy Johnson, right? It would be a timeliness determination then, which is exactly what Gonzales v. Crosby talks about. We also challenge the failure to file a document under Urenga v. Davis. That is an order attacking the process, a defect in the process. Therefore, you can file it by post-judgment motion. And the government has argued that a motion to reconsider denial of a COA doesn't extend the deadline to file. But under the straightforward text of Rule 4, a motion to alter or amend the findings is relevant. So if nothing else, if all we had said to the district court is, hey, you just said that nobody else is, you know, nobody could think that there's no, you know, not possible this is a residual clause, offense is a forced clause. Look what your colleague Judge Lindsey has written, these two very well-reasoned opinions that are on appeal right now. We could ask the judge to alter the findings to include the fact there may be some debate about this. In other words, this wasn't just a motion to reconsider denial of COA. We asked the Court to alter its findings. And under the straightforward application of Rule 4a4, that doesn't just toll the statute of limitations. It either extends the deadline to file a notice of appeal, or it prevents the order from becoming final. But you didn't make that argument to the district court. We didn't, Your Honor, but neither are we required to. Right? The district court also didn't apply the ---- Relying on Rule 4 was ---- I'm sorry? You said you were relying on Rule 4. Correct. To come up with this argument. Which is the rule of appellate procedure. The district court doesn't decide the timeliness of the appeal. But the argument would be the same, I would think. I'm sorry? The argument ---- your argument would have been the same. I don't think so. In other words, we were arguing to the district court not only we should get through the gate and then we lose. I mean, that was an option, right? It was wrong. I mean, it was a totally wrong order. And subsequent developments have vindicated us about that. It's important that the district court understood, right, that this is an illegal sentence. He's entitled to immediate release. We didn't want another year or two of litigation in the case. We wanted the guy released. So I don't deny that we made arguments that you were wrong on the merits. But that is not what Gonzales says. It says if you are challenging an order precluding determination of the merits, then you can do it. In other words, there's ---- they're connected in terms of substance, but this is the jurisdiction, and it's a question for this Court on appeal. On the gatekeeping standard, we don't have to show scienter or mens rea on the district court, right? The Johnson error in Johnson itself is, was it enhanced under the residual clause? That's an abstract legal principle. In other words, if the district court thought that this was a serious drug offense and that's what the court thought, he was just having a really bad day, that doesn't change the fact that we're entitled to relief under Johnson, right? This Court will not penalize the movement for a mistaken belief the district court may have harbored on a silent record. That's Lawrence-Taylor. And for that reason, we ask that you reverse and render judgment. Thank you, Your Honor. Thank you, sir.